UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| JIMMY J. GILLEY AND PATRICIA GILLEY | CIVIL ACTION NO. 14-0667 |
| VERSUS | JUDGE ROBERT G. JAMES |
| LOWE'S HOME CENTERS, L.L.C., ET. AL. | MAG. JUDGE KAREN L. HAYES |

## RULING

This was a personal injury diversity case in which Plaintiff Jimmy Gilley ("Gilley") fell from a stool in the Defendant Lowe's Home Centers, L.L.C. ("Lowe's") Ruston, Louisiana store.

Lowe's filed a Third Party Complaint against 3i Corporation Limited ("3i"), contending that 3i manufactured the stool in question. The Court subsequently granted summary judgment in 3i's favor, dismissing, with prejudice, Lowe's third party demand against 3i, but denying 3i's contemporaneous motion for attorney's fees and costs. [Doc. No. 50]. After summary judgment was granted, Lowe's and the Gilleys reached a settlement, and the case was administratively closed.

Currently pending before the Court is Lowe's Motion for Alteration or Amendment of Judgment ("Motion for Alteration") [Doc. No. 59], in which Lowe's moves the Court to reinstate its third party demand against 3i based on new evidence. Also pending before the Court is 3i's "Motion for Rule 11 Sanctions" against Lowe's. [Doc. No. 66].

For the following reasons, the Motion for Alteration is DENIED. 3i's Motion for Rule 11 Sanctions is also DENIED.

**I.    FACTS AND PROCEDURAL HISTORY**

On the evening of March 30, 2013, Gilley went with his wife and two friends to Lowe's.

While there, Gilley decided to test out a bar stool in a patio display set. [Doc. No. 34, Exh. A, Gilley Deposition ("Gilley Depo."), pp. 45-46]. Gilley testified that he was particularly interested in the stool because it was wooden and would complement his patio well. *Id.* at p. 49-51. When he attempted to sit on the stool, it slid out from under him, and he fell to the floor. *Id.* at 31. Only Gilley and his friend, Benson Bennett ("Bennett"), were present. *Id.* at pp. 62-63. Gilley alleges the stool had metal inserts on the bottom of its legs and that the stool was displayed on Lowe's concrete floor. *Id.* at pp. 66, 57.

Approximately 20 minutes after the incident, Eddie Jones ("E. Jones") and Romairo Jones ("R. Jones"), both managers at Lowe's, arrived. R. Jones completed an accident report, describing the stool involved in the incident as item number 151737, a Safford chair-type stool manufactured by 3i. He based his report on the apparently erroneous assumption that the stool closest to Gilley was the one involved in the accident. [Doc. No. 34, Exh. C, Jones Depo., pp. 12, 34, 47]. R. Jones did not ask Gilley if he fell from the 3i stool. *Id.* at pp. 12, 34; *see also* [Doc. No. 34, Exh. A, Gilley Depo., pp. 148-49]. Gilley testified the stool recorded on the incident report was not the stool from which he fell. *Id.* at pp. 48-54, 103, 107, 148-150. The 3i stool is aluminum, with arms and a back, and has no seat cushion, while Gilley described the stool he fell from as wooden with no arms or back. *See* [Doc. No. 34, Exh. E, Representation of 3i Stool].

Gilley initiated this action on February 21, 2014, in the Third Judicial District Court for the Parish of Lincoln, State of Louisiana. [Doc. No. 1-1]. Lowe's removed to this Court and subsequently filed a Third Party Complaint against 3i, alleging that the stool Gilley fell from was defective, and, accordingly, that 3i owed Lowe's a defense and indemnity per the terms of the parties' Buying Agreement. [Doc. No. 15]. However, Lowe's later conceded that the 3i stool was

not defective. [Doc. No. 46, Lowe's Opposition to 3i's Motion for Summary Judgment, p. 4]. Lowe's did not retain the 3i stool in question; in fact, it is undisputed that it remained on display and was sold after the accident.

The Court granted 3i's motion for summary judgment on the issue of liability, reasoning that Lowe's had failed to generate "factual issues as to whether 3i manufactured the bar stool." [Doc. No. 49, p. 4-5]. Alongside its motion for summary judgment, 3i also moved the Court to award attorney's fees and costs, contending that Lowe's pursued a frivolous Third Party Complaint against it, even after Gilley unequivocally stated in his deposition that the stool he fell from could not have been manufactured by 3i. The Court did not consider the merits of 3i's motion for sanctions at that time because 3i failed to comply with Rule 11's procedural requirements.

Previously, Lowe's had filed a motion for summary judgment on the issue of its potential liability to Gilley [Doc. No. 32], which the Court denied. [Doc. No. 51]. The Court found that there were factual questions as to whether Lowe's placement of a stool with metal tipped legs on a concrete floor created an unreasonably dangerous condition. *Id.* at p. 6.

On April 30, 2015–after the Court had dismissed all claims against 3i and denied Lowe's motion for summary judgment–Lowe's and the Gilleys settled their dispute. [Doc. No. 58, Settlement Letter]. Approximately two weeks later, Lowe's filed the instant Motion for Alteration, urging the Court to reinstate its third party demand against 3i on grounds that it had uncovered evidence that a metal stool manufactured by 3i was the one involved in Gilley's accident. [Doc. No. 59]. Specifically, counsel for Lowe's tracked down Bennett, the only other eyewitness to Gilley's fall, and obtained an affidavit from him stating that the stool Gilley fell from was metal and matched the picture of a 3i chair-type stool shown to him by Lowe's counsel. [Doc. No. 59-2, Exh. 6, Bennett

Affidavit, at ¶ 7]. 3i filed an opposition memorandum [Doc. No. 62], to which Lowe's replied. [Doc. No. 65].

3i then filed the instant Motion for Rule 11 Sanctions, arguing that Lowe's initially filed a frivolous third party demand and maintained that frivolous demand after Gilley testified that a 3i product was not involved in his accident. [Doc. No. 66]. Further, 3i contends that sanctions are also appropriate because Lowe's filed its Motion for Alteration for the improper purpose of avoiding sanctions. *Id.* Lowe's filed an opposition memorandum. [Doc. No. 68]. 3i filed a reply. [Doc. No. 73].

## II. LAW AND ANALYSIS

### A. Lowe's Motion for Alteration

Because Bennett has averred that Gilley fell from a 3i stool after the Court granted summary judgment in 3i's favor, Lowe's moves the Court to re-open this case, arguing that there are factual issues as to whether 3i owes a defense and indemnity. 3i opposes on grounds that Bennett's testimony was available at the outset of this litigation, that Bennett's affidavit is immaterial, and that it will suffer prejudice should the case be re-opened.

District courts have "considerable discretion" in deciding whether to re-open a case under motions to modify or amend a judgment or a motion to vacate a judgment under FED. R. CIV. P. 59(e). *Edward H. Bohlin Co. v. Banning Co.,* 6 F.3d 350, 355 (5th Cir. 1993). However, the Court's discretion must be balanced between finality and the "need to render just decisions on the basis of all the facts." *Id.* In attempting to strike the proper balance between these competing goals, the Court must consider: (1) the importance of the omitted evidence to Lowe's case; (2) the reasons for Lowe's default; (3) whether the evidence was available to Lowe's before responding to the summary

judgment motion; and (4) the likelihood that 3i will suffer unfair prejudice if the case is reopened. *Ford v. Elsbury,* 32 F.3d 931, 937 (5th Cir. 1994).

### 1.   *Bennett's Affidavit is Immaterial*

Lowe's argues that 3i owes it a defense and indemnity per the parties' Buying Agreement because Bennett's affidavit generates factual issues that a 3i product was involved in the incident. In response, 3i asserts that the manufacturer of the stool is immaterial because, even if a 3i stool were involved, Lowe's has conceded that the stool was not defective.

While Bennett's affidavit creates factual questions as to whether Gilley fell from a 3i stool, the affidavit is irrelevant to the issue of whether 3i owes Lowe's a defense and indemnity. As this Court previously stated in its Ruling on 3i's Motion for Summary Judgment, "an indemnification agreement cannot be construed to indemnify the indemnitee (here, Lowe's) against losses resulting from the indemnitee's own negligence absent a clear, unequivocal statement to that effect in the indemnity agreement." [Doc. No. 49, p. 4 (citing *Perkins v. Rubicon, Inc.,* 563 So. 2d 258, 259 (La. 1990))]. The Court finds that, under the parties' Buying Agreement, 3i is not required to indemnify Lowe's for disputes arising from Lowe's own acts of negligence. Because it is undisputed that the subject stool was not defective,[1] and because the Court finds that only Lowe's was potentially negligent, Louisiana precedent is clear that 3i has no duty to indemnify,[2] even if a 3i product was

---

[1] Lowe's concedes that "the patio stool at issue was not defective." [Doc. No. 46, Lowe's Opposition to 3i's Motion for Summary Judgment, p. 4]. Further, discovery has closed, and it is undisputed that the stool Gilley fell from was sold soon after the accident. Thus, Lowe's cannot, under any circumstances, create factual issues that the stool was defective.

[2] The Court notes that, under Louisiana law, the duty to defend is broader than the duty to indemnify, and would be determined by the factual allegations in Gilley's Petition. *See Henly v. Phillips Abita Lumber Co.*, 2006–1856 (La.App. 1st Cir.10/3/07), 971 So.2d 1104, 1109. Lowe's did not make any arguments that the duty to defend was greater than the duty to indemnify in this case.

involved.

For these reasons alone, Lowe's Motion for Alteration could be denied. However, the Court has also considered the other factors under Rule 59(e) and finds that they also support denial.

### 2. *Bennett's Testimony was Previously Available and Relevant and 3i Would Suffer Considerable Prejudice if this Case Was Re-Opened.*

Lowe's asserts that it should be excused for its failure to obtain Bennett's testimony before summary judgment was rendered, contending that his testimony was not relevant until Lowe's was first aware that the identity of the stool's manufacturer was at issue (at Gilley's deposition).[3] Counsel for Lowe's avers that he attempted to contact Bennett multiple times before and after he was aware the stool's manufacturer was relevant, but was unable to reach him. *See* [Doc. No. 59-2, Exh. 4, Affidavit of David Harpole, ¶ 3]. In opposition, 3i asserts that Bennett's testimony was both available and relevant prior to the Court's ruling on 3i's motion for summary judgment.

The Fifth Circuit has held that a Rule 59(e) motion is not the proper vehicle for rehashing evidence or arguments that could have been offered or raised before the entry of judgment. *See Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990). Rather, Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present evidence that was not previously available. *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 473 (5th Cir. 1989); *see also Schiller v. Physicians Resource Group, Inc.,* 342 F.3d 563, 567 (5th Cir. 2003).

Bennett's testimony was always available and relevant. Bennett's phone number was listed on the 2013 Incident Report (approximately two years before 3i filed its motion for summary

---

[3] The deposition took place on February 10, 2015, 30 days before 3i filed its Motion for Summary Judgment. Counsel for Lowe's did not contact Bennett until May 30, 2015.

judgment). Counsel for 3i, Andrew Baer ("Baer"), avers that he called this same number on May 18, 2015, reached Bennett's wife on the first try, and left a message. *See* [Doc. No. 62, Exh. A, Baer Affidavit, at ¶¶ 4-12]. Bennett called Baer back later that same evening and informed him that his wife typically stays home during the day to care for her mother.

Moreover, as 3i points out, Bennett's testimony was always relevant regarding the facts and circumstances of Gilley's fall. Indeed, Lowe's counsel admits he attempted to contact Bennett several times *before* Gilley's deposition. *See* [Doc. No. 59, Exh. 4, Harpole Affidavit, ¶ 3]. To the extent Lowe's contends that it was unaware that Bennett might offer relevant testimony on the particular stool that Gilley fell from, that contention is without merit. R. Jones' Report had no attached photographs, and Lowe's knew the stool described in the Report had been sold as non-defective.[4] Thus, from the outset of litigation, Bennett's testimony was relevant to all the facts surrounding Gilley's fall, including to the issue of who manufactured the stool.

Finally, because Lowe's settled with Gilley after 3i had been released, 3i had no opportunity to participate in the settlement. Consequently, the Court finds that 3i would suffer substantial prejudice should the case be re-opened. For the foregoing reasons, Lowe's Motion for Alteration is DENIED.

    **B.**    **3i's Motion for Rule 11 Sanctions**

3i moves for Rule 11 sanctions against Lowe's on numerous grounds. Rule 11(b) provides in relevant part that when filing a pleading or motion, an attorney certifies to the best of his

---

[4] The Court does not conclude, however, that Lowe's failure to obtain Bennett's testimony before filing its third party demand was objectively unreasonable for purposes of levying sanctions.

knowledge, information, and belief, formed after a reasonable inquiry under the circumstances,

>   (1)   it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
>   (2)   the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
>   (3)   the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

FED. R. CIV. P. 11(b). At issue here is whether Lowe's counsel violated subpart (b)(1), (b)(2), or (b)(3). A violation of any subpart justifies sanctions as each provides an independent basis for sanctions. *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 802–04 (5th Cir. 2003) (en banc). In determining compliance with Rule 11, an attorney is measured under a standard of objective reasonableness based on the circumstances. *Whitehead*, 332 F.3d at 802–03. The reasonableness of the conduct involved is to be viewed at the time counsel signed the document alleged to be the basis for the Rule 11 violation, commonly referred to as the "snapshot rule." *Marceaux v. Lafayette City Par. Consol. Gov't*, 14 F. Supp. 3d 760, 766 (W.D. La. 2014). This rule "ensures that Rule 11 liability is assessed only for a violation existing at the moment of filing." *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 570 (5th Cir. 2006).

The key issues this motion presents are (1) whether, based on the information reasonably available to Lowe's at that time, it was objectively reasonable for Lowe's to file its Third Party Complaint; (2) if so, whether it was objectively reasonable for Lowe's to maintain suit after it

became aware that Gilley claimed a 3i product was not involved; and (3) whether Lowe's Motion for Alteration was presented for an improper purpose.

### 1. Lowe's Had Objectively Reasonable Grounds for its Third Party Complaint.

3i argues Lowe's did not conduct a reasonable investigation before filing its Third Party Complaint, which, they contend, would have revealed that a 3i product was not involved. Lowe's refers the Court to R. Jones' Incident Report, which unambiguously identified a 3i stool as being involved in Gilley's accident.

The Court finds that the Incident Report alone provided Lowe's with objectively reasonable grounds for filing its Third Party Complaint. Although the Incident Report did not have attached photographs, it was not unreasonable for Lowe's to rely on a report prepared by an employee charged with investigating Gilley's accident.[5] Until Gilley's deposition (three months after Lowe's initiated its demand against 3i), there was nothing to suggest that the subject stool was anything but a 3i product; further, 3i did not argue that the stool had been misidentified until after Gilley's deposition. Lowe's, therefore, had sufficient "evidentiary support" under Rule 11 to avoid sanctions for the initial filing of its Third Party Complaint.

### 2. Likewise, Lowe's Maintenance of its Third Party Demand After Gilley's Deposition is not Sanctionable.

3i asserts sanctions are also appropriate because Lowe's maintained its claims against 3i after Gilley's deposition. Refusal to dismiss a party when there exists "no affirmative evidence" for the basis of the claim is sanctionable under Rule 11. *See, e.g, Worrell v. Houston CanA Acad.*, 287 F.

---

[5] There is no tension between this conclusion and the Court's Ruling on Lowe's Motion for Alteration, (*supra,* p. 7), because different standards apply.

9

App'x 320, 326 (5th Cir. 2008) (sanctions awarded where attorney refused to dismiss claims after he was presented with evidence that he had sued the wrong defendant and had "no affirmative evidence" that inclusion of that defendant was proper). Further, even if a filing was initially objectively reasonable, maintenance of suit may nonetheless be sanctionable if an attorney fails to dismiss claims after it becomes clear those claims lack evidentiary and legal support. *See, e.g., Sorapuru v. Sheraton New Orleans Hotel,* CIV.A.No. 12-0326, 2013 WL 2404595, at *3 (E.D. La. May 30, 2013) (awarding sanctions for counsel's refusal to withdraw claims after all of the plaintiff's treating doctors testified that the plaintiff's injuries could not have been caused by the alleged incident).

Under the facts of this case, Lowe's decision to maintain its third party demand is not sanctionable because, unlike the circumstances in *Worrell* and *Sorapuru*, Lowe's had some evidence indicating that preserving its demand was proper. The Buying Agreement dictated that 3i had the duty to defend and indemnify Lowe's for legal actions arising out of the "possession or use of any [3i] product . . . [or] any other allegation arising directly or indirectly from any product originating from [3i]." [Doc. No. 68, Exh. C, Buying Agreement, p. 16]. Because of R. Jones' Incident Report, it was a debatable position–even after Gilley's deposition–that Gilley fell from a 3i stool.

Further, Lowe's had an arguable legal position for preserving its demand after Gilley's deposition. Lowe's argued that the Buying Agreement provided for indemnification, even if Lowe's negligence alone caused Gilley's injuries. The Agreement states that 3i's duty to defend or indemnify is invoked when "use" of a 3i product gives rise to litigation, even if the claim is "groundless, false or fraudulent." [Doc. No. 68, Exh. C, Buying Agreement, p. 16]. Although, in retrospect, it was not

a strong legal position, Lowe's could not have known how the Court was going to rule.[6] Thus, Lowe's maintenance of its third party demand after Gilley's deposition is not sanctionable.

### 3. Sanctions Are not Otherwise Appropriate.

Finally, 3i argues sanctions are otherwise appropriate because Lowe's filing of its Motion for Alteration was presented for the "improper purpose" of avoiding sanctions. "If it is objectively ascertainable that an attorney submitted a paper to the court for any improper purpose, even if the paper contains nonfrivolous representations of papers well-founded in fact and law, sanctions may still be warranted." *Marceaux,* 14 F. Supp. 3d 760, at 766. In support of its claim, 3i points the Court to the events leading up to Lowe's filing of the motion. Specifically, the time line shows that Lowe's counsel did not contact Gilley until after receiving a Rule 11 letter from 3i.[7]

While the circumstances surrounding Lowe's Motion for Alteration are somewhat suspect, Lowe's had other reasons to file that motion. This Court's previous Ruling on 3i's Motion for Summary Judgment emphasized that Lowe's had failed to create factual issues that a 3i stool was involved in Gilley's accident. The Ruling, however, failed to clearly articulate that, even if a 3i product was implicated, 3i would have no duty to indemnify because it was undisputed that the 3i stool in question was not defective, and, therefore, only Lowe's could potentially be held liable under the Court's interpretation of the parties' Buying Agreement. Because of this ambiguity, 3i

---

[6] The Court ruled that there were no factual issues as to whether a 3i product was involved and, albeit not clearly, also ruled that the parties' Buying Agreement did not provide for indemnification for Lowe's own acts of negligence. *See* [Doc. No. 49, p. 6].

[7] The Court dismissed 3i on April 15, 2015. One week later, on April 23, 2015, 3i sent its Rule 11 letter to Lowe's. On April 27, 2015, Lowe's settled with the Gilleys. Lowe's contacted Bennett and obtained his affidavit on May 7, 2015, and then filed its Motion for Alteration on May 11, 2015.

understandably moved to re-open the case based on Bennett's testimony that Gilley indeed fell from a 3i stool. Consequently, 3i's Motion for Rule 11 Sanctions is DENIED.

MONROE, LOUISIANA, this 22nd day of July, 2015.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE